RECEIPT NUMBER
561092

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

-------------------------------------------------x
MARTIN MILLER, on behalf of all    :    Case: 2:07-cv-13548
persons similarly situated,         :    Assigned To: Roberts, Victoria A
                                    :    Referral Judge: Majzoub, Mona K
         Plaintiff,                 :    Filed: 08-23-2007 At 12:42 PM
                                    :    CMP MILLER V. ONSTAR CORP (TAM)
     --against--                    :    CLASS ACTION
                                    :
ONSTAR CORPORATION and              :
GENERAL MOTORS CORP.,               :
                                    :
         Defendants.                :
-------------------------------------------------x

## CLASS ACTION COMPAINT

Plaintiff Martin Miller alleges the following Complaint on information and belief, except for those matters which relate to Plaintiff and his own acts, which he alleges on personal knowledge:

## SUMMARY OF THE ALLEGATIONS

1.  Plaintiff Martin Miller is the owner of a 2002 model General Motors ("GM") vehicle. Like millions of other GM customers desirous of ensuring his safety on the road, Plaintiff subscribed to "OnStar," a vehicle tracking and communications system that is provided by defendant GM and OnStar Corp., its wholly-owned subsidiary, on a subscription basis. Among other things, OnStar provides remote emergency assistance, vehicle diagnostics, turn-by-turn navigation, stolen vehicle tracking, hands-free calling, and a variety of other features. Although GM licenses OnStar to other auto manufacturers on a limited basis, it is most widely available on GM cars, which offer subscription OnStar service with the purchase of 54 different car models. Many consumers expressly buy GM cars so that they can have access to OnStar.

The OnStar system is factory-installed, and presently costs between $199 and $299 annually, depending on the features selected. Since first becoming available in 1996, OnStar has been installed in million of cars sold by GM, as well as in certain cars sold by Toyota, DaimlerChrysler AG, and others.

2. OnStar is heavily promoted by GM dealers, and is especially popular with vulnerable drivers, such as the elderly and handicapped. On its website OnStar summarizes its benefits as follows:

> OnStar offers an unparalleled combination of safety, security, and convenience services to help keep you and your family safe while traveling. With 24/7 connectivity to a live Advisor, you have the peace of mind of knowing that when you need help, OnStar can pinpoint your location and quickly contact help on your behalf. With its simple push-button operation, OnStar is easy to use when you're driving.

3. The OnStar system works on a combination of satellite and land-based cellular technology. In the 1990's, the most widely used technology for the transmission of cellular communications was analog technology, and OnStar was designed for use with analog systems. As the decade progressed, however, the more attractive digital technology began to replace analog. Because of the advantages of digital, cellular communications providers such as Verizon began to petition the Federal Communications Commission (the "FCC") to permit them to drop analog service, a measure which would have an adverse affect on OnStar, as OnStar was reliant on the continued availability of analog networks.

4. By early 2001, at the latest, it was apparent that analog availability would be phased out. In May 2001, as part of its biennial review of regulations, the FCC announced that it was strongly considering proposals to eliminate analog service. It noted in a Notice of Proposed Rulemaking that digital was "clearly the state-of-the art technology in use today" and that analog usage was in a "downward trend." In August 2002 the FCC issued a ruling that surprised no

one: analog service would be phased out over a series of years, with analog networks no longer being required at all by 2008. To those with a sophisticated knowledge of the technology, that meant that cars that had analog-only OnStar systems would lose service in 2008. Defendants did not move quickly to convert new cars carrying OnStar from analog to digital technology, allowing purchasers until at least 2005 to buy cars that they did not understand contained obsolescent equipment.

5. Although defendants knew that availability of OnStar service was a material factor in the decision of many consumers to buy a GM vehicle, and that many buying cars with pre-installed OnStar service would lose that service during the useful life of the car, it failed to clearly inform car owners of this issue from 2001 through at least the beginning of 2007. Thus, all OnStar users who have cars made before 2002, most who have cars made from 2002-04, and some who have even later models will have their service go silent in 2008. Cars equipped with analog-only equipment cannot be converted from analog to digital. Other cars which have hybrid receivers can be converted, but defendants will levy an expected and previously undisclosed charge for this privilege.

6. GM and OnStar have shamefully used their own wrongdoing as a sword against their own loyal customers, telling them that they should buy a new car if their vehicle cannot be upgraded, or that an upgrade will be provided only upon payment of a fee and/or upon acceptance of a multi-year OnStar subscription (rather than the usual one-year contract).

7. Defendants were fully aware that their customers were in the dark as to the fact that they were buying a car containing outmoded and obsolescent equipment. Indeed, the OnStar website contains instructions as to how to tell if your car has analog or digital OnStar service, which involves either calling OnStar and asking what type of equipment the vehicle contains, or

3

asking the GM dealer to look up this information by Vehicle Identification ("VIN") number. No materials provided to new car buyers told them they had outmoded analog service, as defendants wished to conceal that fact so that: (a) buyers interested in OnStar would not be dissuaded from buying vehicles that contained outmoded equipment; (b) they could avoid providing discounts on those cars that had outmoded equipment; and (c) they could use the elimination of analog service as spur for the sale of new cars or new, multi-year OnStar subscriptions.

8. Loyal GM car owners have been furious with the way they have been treated by the company. They have been damaged by the purchase of GM vehicles with analog only OnStar hardware and the impending loss of their OnStar service, the resultant diminution in value of their vehicles, or by being forced to make payment to GM of a hardware upgrade fee (on systems which can be upgraded), so as to enjoy continued use of their OnStar systems.

9. This action is brought as a class action on behalf of all persons in the United States who have OnStar-equipped vehicles which had or have factory-installed analog service. By contractual provision, all members of the class are bound by the laws of the State of Michigan, and can utilize the remedies Michigan provides. As alleged herein, the unlawful and deceptive conduct of the defendants violates the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901 *et seq.* Plaintiff and the Class seek both money damages and appropriate injunctive relief.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this matter pursuant 28 U.S.C. § 1332(d)(2) inasmuch as the Defendants are citizens of the State of Michigan and the members of the Class alleged herein include persons who are citizens of States other than Michigan; the action is a putative class action pursuant to Federal Rule of Civil Procedure 23; and the amount

4

in controversy exceeds the sum of $5 million, exclusive of interests and costs.

11. Venue is proper in this district pursuant to 28 U.S.C. §1391.

## THE PARTIES

12. Plaintiff Martin Miller is a citizen of the State of Florida who is the original owner of a GM 2002 model vehicle, and has used OnStar since his purchase. Plaintiff's OnStar equipment is analog-based and cannot be converted by any means known to Plaintiff.

13. Defendant General Motors Corp. ("GM") is one of the world's largest producers of motor vehicles. It maintains its corporate offices at 300 Renaissance Center, Detroit, Michigan 48265.

14. Defendant OnStar Corp. is a wholly-owned GM subsidiary. It maintains its corporate offices at 400 Renaissance Center, Detroit, Michigan 48265.

15. Defendant GM controls and directs the activities of OnStar, and colluded and conspired with OnStar in effectuating the deceptive acts described herein. GM is equally liable with OnStar for all violations alleged herein of the Michigan Consumer Protection Act.

## SUBSTANTIVE ALLEGATIONS

16. Since its introduction in 1996, OnStar has grown to be a crucial service for car owners, especially the elderly, the handicapped, and those who are fearful of driving alone, or through remote areas.

17. OnStar has been installed on millions of vehicles. Each year, OnStar answers approximately 325,000 roadside assistance calls, 72,000 good Samaritan calls (request to help other motorists), and 135,000 emergency calls. The wide availability of OnStar on a large variety of GM vehicles has long been a selling point for GM, as many customers view OnStar as an indispensable service. The average consumer is not, however, an expert in motor vehicle or

cellular technology, and would not know (because defendants never told them) what type of technology their OnStar system employed, and what all of the implications would be if their car contained analog technology as of the time of its 2008 phase-out. To the extent any OnStar materials disseminated to purchasers even raised the issue, these materials failed to inform the owner what type of equipment he had. As to those who had analog-only equipment, these materials failed to inform that owner that the switchover from analog to digital was not a matter that could be easily remedied by a parts upgrade. As to those who have analog equipment that could be converted to digital, these materials failed to inform the owner that the upgrade would be accompanied by a fee and tactics requiring long-term renewals of the OnStar service that would not be imposed on other, identical car owners who happened to be sold a model with digital ready technology.

18. Defendants had substantial time to make the transition from analog to digital OnStar technology, and an ongoing responsibility to warn car buyers that in many cases they had failed to do so. There was no excuse for defendants to conceal from buyers of cars that were analog-equipped that their specific automobile was analog equipped. The only explanation is that they wished to delude uninformed buyers into paying full price for a car that was outfitted with inferior and outmoded systems.

19. The original rules providing for the provision of analog cellular service were adopted by the FCC in the early 1980's. In 1996, Congress directed the FCC to review and (if needed) update its rules based on a review of technological developments every two years (the "Biennial Review"). Whether analog service should be phased out came up during the FCC's Year 2000 Biennial Review, although its ultimate conclusion regarding the matter was a foregone conclusion. As one communications industry commentator stated, the analog issue

arose then because of "the tremendous competition and technological developments in the mobile industry. The rapid growth of the mobile telephony industry caused the Commission to reconsider whether the analog rule was still needed to promote competition or to make sure that mobile service is available to everyone." K.P. Strauss, Trace Research and Development Center, Univ. of Wisconsin, "Summary of FCC Proceeding," Sept. 24, 2002. In its May 17, 2001 Notice of Proposed Rulemaking, the FCC stated many reasons for elimination of analog service, noting that digital service had become state of the art, and that usage of analog service was in a downtrend. Notice of Proposed Rulemaking, FCC 01-153, May 17, 2001.

20. On August 8, 2002, the FCC finalized its rules, allowing analog service to be discontinued after a "sunset" period, with no such service required by February 2008. At that time, the FCC noted in a press release that the rule requiring analog service to be provided "is no longer necessary" and "imposes costs and impedes spectral efficiency."

21. Defendants would have known by 2000 at the latest that analog service was becoming obsolete, that digital service was replacing it, and that its analog-only vehicles would be overtaken by technology if not modified or updated. In 2002-04, defendants sold millions of cars equipped with outmoded analog technology that would be useless in three to five years, and continued to sell some analog equipped models even into 2006. As the average car buyer tends to keep a car for 4.8 to 5.5 years,[1] and the median age of all cars is over eight years,[2] defendants knew that many if not most OnStar customers would still be in possession of analog-equipped

---

[1] Source: Paul Taylor, Chief Economist, National Association of Automobile Dealers, quoted in "Car Loans Keep Getting Longer.", RedOrbit.com, Aug. 21, 2006. http://www.redorbit.com/news/technology/625237/car_loans_keep_getting_longer/index.html?source=r_technology

[2] See Auto Channel quoting a study by R.L. Polk & Co http://www.theautochannel.com/news/2004/02/09/179801.html

7

cars as of the phase-out date. These cars would have diminished value, and/or would require costly or inconvenient upgrades.

22. Despite this, defendants engaged in a scheme to conceal whether or not a particular car had analog or digital equipment, and to conceal the full consequences of having unwittingly purchased an analog equipped vehicle. At best, OnStar's sales materials and Terms and Conditions contracts spoke generally of OnStar analog equipment not working by 2008, but made no mention of the fact that there was nothing many customers could do about this (*i.e.*, no ready parts upgrade would be available), and that other customers could remedy the situation only by paying extra fees and accepting new multi-year OnStar contracts.

23. Defendants' customers would have been shocked to learn that defendants intentionally sold them outmoded equipment without any specific warning, and without any adequate plan to address the situation. Indeed, after receiving the surprising information as to the analog shut off in early 2007, customers reacted furiously on Internet websites catering to auto buyers. Many expressed anger at defendants not having warned them sooner (including at the time of purchase), expressed that they bought their vehicles specifically with OnStar in mind, and called for litigation to be commenced. The following comments are typical of those posted on various websites:

> --"I have a 2001 cadillac, all paid for and with only 40,000 miles on it so I'm not ready to have to buy another at this time. I have already used the On Star in on auto accident when someone hit me and the reason I wanted the car in the first place was the assurance that this 'safety feature' could save me and I could talk to a live person if I was in trouble or for any reason. This is so outrageous that this has been decided for all of us...." (posted by GM owner Teresa Miller on gadgetell.com)

> "I just got my letter from Onstar today, and was never informed by the dealership of the outdate problem. I called Onstar customer service and spoke to 3 agents there, called GM in Detroit and even the dealership. No one wants to do

anything but offer to sell me a new GM vehicle and give me a free year of Onstar. They uped the auntie and offered $500 of Onstar on a new GM vehilce. They have the gall to think I am stupid enough to buy another GM vehilce after this!!! Forget customer loyalty! Forget brand loyalty! I may never buy a GM vehicle again. Class action suit anyone?" (posted by "Patty" on gadgetell.com)

-- "i just heard about the on star changeover in a letter from g.m. they thanked my for my loyalty and then told me if i wanted onstar i would have to buy a new car. yeah, right! in addition, as the parent of a younger driver i have developed an enormous sense of security when he leaves the driveway not to mention my husband and myself. i don't know how we are going to replace that. our car is not equipped to change over to digital......." (Posted by Adele Rothman on blogs.cars.com).

-- Bought new Park Avenue in July 2004. Loyal GM customer for 35 years. Would I have bought this vehicle if anyone had even hinted that the OnStar might go silent? No. I could have waited to trade. I feel betrayed. Emailed OnStar folks with no response or apology...." (Posted by "Pescatore" on engadget.com).

24.  The Terms and Conditions under which OnStar is sold provides for the application of Michigan law to all sales. Under the Michigan Consumer Protection Act, vendors such as defendants are prohibited from, among other things: (a) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; (b) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; (c) Entering into a consumer transaction in which the consumer waives or purports to waive a right, benefit, or immunity provided by law, unless the waiver is clearly stated and the consumer has specifically consented to it; (d) Charging the consumer a price that is grossly in excess of the price at which similar property or services are sold; (e) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and (f) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

25. In light of the allegations above, defendants have violated Michigan Consumer Protection Act, and are liable to Plaintiff and the Class for all damages they have suffered.

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure, Rule 23 (a) and (b)(3). This action is brought as a class action on behalf of all persons in the United States who have OnStar-equipped vehicles which had or have factory-installed analog service (the "Class").

27. The members of the Class are so numerous that joinder of all members is impracticable. Millions of vehicles were sold with OnStar analog equipment, with upwards of 500,000 still held by original owners, and millions more held by aftermarket purchasers.

28. Plaintiff's claims are typical of the claims of the members of the Class. All members of the Classes are similarly affected by defendants' unlawful conduct that is complained of herein. Plaintiff will fairly and adequately protect the interests of the members of the Classes and has retained counsel competent and experienced in class action litigation. Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members of the Classes. Among the questions of law and fact common to the Class are

    a. whether defendants have acted in violation of the Michigan Consumer Protection Act (the "MCPA");

    b. whether defendants have acted in concert to violate the MCPA;

    c. whether plaintiff and the Class have been damaged; and

    d. the proper measure of damages.

29. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Classes to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## CAUSE OF ACTION

### (Violation of the Michigan Consumer Protection Act)

30. Plaintiff incorporates by reference all previous allegations.

31. Under the Michigan Consumer Protection Act, vendors such as defendants are prohibited from, among other things: (a) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; (b) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; (c) Entering into a consumer transaction in which the consumer waives or purports to waive a right, benefit, or immunity provided by law, unless the waiver is clearly stated and the consumer has specifically consented to it; (d) Charging the consumer a price that is grossly in excess of the price at which similar property or services are sold; (e) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and (f) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

32. By reason of the acts described above, defendants have violated the Michigan Consumer Protection Act.

33.     Plaintiff and all Class members are entitled to an award of all damages they have suffered by reason of defendants' wrongful acts.

**WHEREFORE**, Plaintiff, on behalf of himself and the Classes as defined herein, respectfully demand a trial by jury and pray for judgment as follows:

a. certifying that this action may be maintained as a Class Action by the named Plaintiff as representative of the Class;

b. awarding compensatory damages;

c. awarding injunctive relief;

d. awarding pre- and post-judgment interest to the Classes, as appropriate;

e. awarding attorneys' fees and filing fees and costs to Plaintiffs and the Class; and

d. granting such other and further relief as the Court deems just and proper.

DATED: August 20, 2007

                        Respectfully submitted,

                        THE MILLER LAW FIRM, P.C.

                        E. Powell Miller (P39487)
                        Marc L. Newman (P51393)
                        950 W. University Drive, Suite 300
                        Rochester, Michigan 48307
                        (248) 841-2200 Phone
                        (248) 652-2852 Fax
                        mln@millerlawpc.com
                        www.millerlawpc.com

KAPLAN FOX & KILSHEIMER LLP
Frederic S. Fox
Larry D. King
Donald R. Hall
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714


LAW OFFICES OF KENNETH A. ELAN
Kenneth A. Elan
217 Broadway
New York, NY 10007
Telephone: (212) 619-0261
Facsimile: (212) 385-2707

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
MARTIN MILLER

**DEFENDANTS**
ONSTAR CORPORATION

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Florida
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED Wayne Cnty, MI
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(C)** ATTORNEYS (FIRM NAME, ADDRESS AND TELEPHONE NUMBER)
E. Powell Miller (P39487) Marc L. Newman (P51393)
The Miller Law Firm, PC
950 W. University Drive, Suite 300
Rochester, MI 48307   (248) 841-2200

ATTORNEYS (IF KNOWN)

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX)
- 1 U.S. Government Plaintiff
- 2 U.S. Government Defendant
- 3 Federal Question (U.S. Government Not a Party)
- [X] 4 Diversity (Indicate Citizenship of Parties in item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | [X] 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | [X] 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

**IV. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

Case: 2:07-cv-13548
Assigned To: Roberts, Victoria A
Referral Judge: Majzoub, Mona K
Filed: 08-23-2007 At 12:42 PM
CMP MILLER V. ONSTAR CORP (TAM)

CONTRACT:
- 110 Insurance
- 120 Marine
- 130 Miller Act
- 140 Negotiable Instrument
- 150 Recovery of Overpayment & Enforcement of Judgment
- 151 Medicare Act
- 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- 153 Recovery of Overpayment of Veteran's Benefits
- 160 Stockholders' Suits
- 190 Other Contract
- 195 Contract Product Liability

TORTS — PERSONAL INJURY:
- 310 Airplane
- 315 Airplane Product Liability
- 320 Assault, Libel & Slander
- 330 Federal Employers' Liability
- 340 Marine
- 345 Marine Product Liability
- 350 Motor Vehicle
- 355 Motor Vehicle Product Liability
- 360 Other Personal Injury

TORTS — PERSONAL INJURY:
- 362 Personal Injury— Med. Malpractice
- 365 Personal Injury— Product Liability
- 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY:
- 370 Other Fraud
- 371 Truth in Lending
- 380 Other Personal Property Damage
- 385 Property Damage Product Liability

REAL PROPERTY:
- 210 Land Condemnation
- 220 Foreclosure
- 230 Rent Lease & Ejectment
- 240 Torts to Land
- 245 Tort Product Liability
- 290 All Other Real Property

CIVIL RIGHTS:
- 441 Voting
- 442 Employment
- 443 Housing/Accommodations
- 444 Welfare
- 440 Other Civil Rights

PRISONER PETITIONS:
- 510 Motions to Vacate Sentence
- HABEAS CORPUS
- 530 General
- 535 Death Penalty
- 540 Mandamus & Other
- 550 Civil Rights
- 555 Prison Condition

FORFEITURE/PENALTY:
- 690 Other

LABOR:
- 710 Fair Labor Standards Act
- 720 Labor/Mgmt. Relations
- 730 Labor/Mgmt. Reporting & Disclosure Act
- 740 Railway Labor Act
- 790 Other Labor Litigation
- 791 Empl. Ret. Inc. Security Act

BANKRUPTCY:
- 840 Trademark

SOCIAL SECURITY:
- 861 HIA (1395ff)
- 862 Black Lung (923)
- 863 DIWC/DIWW (405(g))
- 864 SSID Title XVI
- 865 RSI (405(g))

FEDERAL TAX SUITS:
- 870 Taxes (U.S. Plaintiff or Defendant)
- 871 IRS — Third Party 26 USC 7609

OTHER STATUTES:
- 675 Customer Challenge 12 USC 3410
- 891 Agricultural Acts
- 892 Economic Stabilization Act
- 893 Environmental Matters
- 894 Energy Allocation Act
- 895 Freedom of Information Act
- 900 Appeal of Fee Determination Under Equal Access to Justice
- 950 Constitutionality of State Statutes
- [X] 890 Other Statutory Actions

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)
- [X] 1 Original Proceeding
- 2 Removed from State Court
- 3 Remanded from Appellate Court
- 4 Reinstated or Reopened
- 5 Transferred from another district (specify)
- 6 Multidistrict Litigation
- 7 Appeal to Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUES UNLESS DIVERSITY)
28 U.S.C. 1332 (d); Michigan Consumer Protection Act MCLA § 445-901

**VII. REQUESTED IN COMPLAINT:** CHECK IF THIS IS A **CLASS ACTION** x UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint
JURY DEMAND: YES [X] NO

**VIII. RELATED CASE(S) IF ANY** (See instructions): In Re: General Motors Onstar Litigation
JUDGE Sean F. Cox
DOCKET NUMBER 07-11838

DATE
August 23, 2007

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

## PURSUANT TO LOCAL RULE 83.11

1. Is this a case that has been previously discontinued or dismissed?  ☐ YES  ☒ NO

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____

2. Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)  ☐ YES  ☒ NO

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____

NOTES: